<hr />

JOHNSON CO. v. TOLEDO TRACTION CO.

(Circuit Court, D. Ohio, W. D.   February 11, 1902.)

No. 1,519.

1. PATENTS—VALIDITY—LACK OF NOVELTY.

The Moxham patent, No. 536,734, for a railway switch structure, which consists of a metallic structure provided with a pocket in which a plate grooved to form a flangeway and point is removably secured, the remainder of the switch being secured to said metallic structure, and patent No. 540,796, to the same grantee, for a similar structure, in combination with a retaining material between the plate and the sides of the pocket to hold the plate in position, are each void for lack of novelty, each element in the combination being old, and its use for similar purposes well known; such patents also *held* not infringed, even if conceded validity.

In Equity. Suit for infringement of letters patent No. 536,734, issued to Arthur J. Moxham, April 2, 1895, and No. 540,796, issued to the same inventor, June 11, 1895, both for railway switch structures. On final hearing.

Harding & Harding, for complainant.
Staley & Bowman, for respondent.

WING, District Judge. The patent sued upon, No. 536,734, dated April 2, 1895, claims a railway switch structure which consists of a metallic structure provided with a pocket in which a plate, which is grooved so as to form the flangeway and point, is removably secured, the remainder of said switch being secured to said metallic structure. Reducing this claim to its elements, it is a switch structure of metal provided with a pocket, in which a grooved plate is removably secured. The second claim in its elements is a switch structure of metal, provided with a pocket adapted to receive a grooved plate, the rails of

the remainder of the switch being integrally secured to said structure. The third claim is for a switch structure of metal, provided with a pocket in which a grooved plate is removably secured, the rails of the remainder of the switch being integrally secured to said structure. The fourth claim is for a switch structure of metal, provided with a pocket adapted to receive a plate, and also provided with projections which correspond in cross section with the rail of the remainder of the switch. The fifth claim is for a switch structure of metal, with a pocket adapted to receive a plate, and provided, on its exterior, with projections which correspond in cross section with the rails of the remainder of the switch. In patent No. 540,796, claim 1, is for a switch structure comprising a body portion, having the diverging rails secured thereto, and having a pocket adapted to receive a plate; a plate in said pocket having flangeways and the point formed thereon, and a retaining material between the plate and the sides of said pocket, whereby the plate is held in position in said pocket. Claim 2 is for a railway switch structure, in combination with a body portion having a pocket, a plate in said pocket having track surfaces formed thereon, and a filling material between the plate and the sides of the pocket. The defense made is invalidity of each and both of these patents and denial of infringement.

Under the head of noninfringement, the defendant claims that it is a lawful user of the devices claimed in the complainant's patents, because the device which is claimed by the complainant to constitute the infringement was purchased by the defendant from the complainant. The purposes of laying any railway track is to adapt the surface of the earth to the peculiar form of vehicle. For the purposes of street railways less change is permitted in the surface of a street than could be employed in steam railway construction. In the specifications of patent No. 536,734, the inventor states:

"The object of my invention is to provide a switch piece in which is inserted, at the point of excessive wear, a plate of more durable quality than the remainder of the track, and one which may be readily removed for realignment or replacing when desired."

None of the claims of this patent would cover the idea of supplying a harder track material at places of excessive wear. There is described and claimed in the patent a metallic structure, with rails integral with it, in which structure there is a pocket adapted to receive a plate. The method of joining two materials for any purpose, by setting the one material in a pocket formed in the other, is old, as a matter of common knowledge. That it is desirable that some parts of a wearing surface should be harder than others was discovered long since. That it was discovered with respect to railroad tracks is shown by the patent to Griggs in 1837. In 1852 it is indicated in the patent to Curtis that it was convenient to form recesses or openings in the bedplate as a means of setting into such bedplate the frog point, so that, when worn, it might be readily removed, and new points supplied. In patent No. 540,796, claim 1 covers a method of more or less firmly fixing the plate in the pocket by the use of a retaining or filling material between the plate and the sides of the pocket. Zinc, lead, sulphur, or cement are suggested in the specifications as material

which may thus be used. This method of securing one piece of material within a pocket formed in another material is old, of common knowledge. Defendant's exhibit model of Greenwald's plain step box shows such method. Both patents are void for want of novelty.

This holding perhaps relieves from the necessity of considering the defense of noninfringement. However, I shall pass upon that question as well. It is not disputed that the defendant had purchased from complainant and placed in its track the track structure made under complainant's patents. The proof of infringement furnished by the complainant is the testimony of complainant's witness Entwisle. He states that he made an examination of the switch structure employed by the Toledo Traction Company, of Toledo, Ohio, at Summit and St. Clair streets, Toledo, Ohio, on June 20, 1898. The witness produces a drawing marked "Exhibit A." All that the witness saw was the surface of this structure, and all that he was able to learn from such examination was that there was a cast-iron structure, and a plate of harder metal placed therein, which he calls "guarantee plate"; that there was a space between the sides of the "guarantee plate" and the cast-iron structure, which space was filled with babbit metal. This is not enough to show infringement. Mr. Richard Elton, who was for a number of years track superintendent of the defendant company, on page 52 of the defendant's record testifies that the frogs and mates in use by the defendant at the corner of Summit and St. Clair streets, Toledo, were furnished by the Johnson Company, the complainant. The proof of the complainant is insufficient to show infringement; and, even if sufficient proof had been furnished to show that the defendant had used a device covered by the claims in the complainant's patents, yet the testimony would leave very grave doubt, to say the least, as to whether the device described as being the infringing device was or was not the article sold by the Johnson Company to the defendant for use.

The bill is dismissed, and costs adjudged against the complainant.